# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Savanna Grove Coach Homeowners'
Association,

        Plaintiff,

v.

Auto-Owners Insurance Company,

        Defendant.

File No. 19-cv-1513 (ECT/TNL)

**OPINION AND ORDER**

---

Adina R. Bergstrom, Brenda M. Sauro, and Kayla M. Cottier, Sauro & Bergstrom, PLLC, Oakdale, MN, for Plaintiff Savanna Grove Coach Homeowners' Association.

Bradley J. Ayers, Eric G. Nasstrom, and Nathaniel R. Greene, Morrison Sund PLLC, Minnetonka, MN, for Defendant Auto-Owners Insurance Company.

---

Plaintiff Savanna Grove Coach Homeowners' Association, the corporate representative of a townhome community in Blaine, Minnesota, that suffered significant property damage in a June 2017 storm, brought this case against its insurer, Auto-Owners, to recover policy benefits it claims Auto-Owners must pay for the storm damage and additional amounts. Before this case was filed, the Parties participated in an appraisal process to resolve their disagreement over the replacement-cost value of Savanna Grove's storm-damage claim. That process, authorized by Minnesota law and the policy, yielded an appraisal award in Savanna Grove's favor of $2,614,624.35. Of that amount, $941,809.83 remains unpaid.

Savanna Grove has filed a motion seeking confirmation of the appraisal award and entry of a judgment in its favor that would include the unpaid amount of the appraisal award, interest of three types, and attorneys' fees and costs. Savanna Grove says it has triggered Auto-Owners' obligation to pay the unpaid amount of the appraisal award as a matter of law by submitting evidence showing that it has incurred repair and replacement costs greater than the appraisal award. Auto-Owners accepts the appraisal award but argues that judgment cannot be entered because Savanna Grove's evidence is insufficient and does not eliminate fact questions concerning the legitimacy of its general contractor's invoices. Savanna Grove's motion will be granted. Savanna Grove has done what the law and policy require to show that it spent an amount greater than the appraisal award to repair or replace its property, and Auto-Owners' allegations and authorities do not justify the denial of Savanna Grove's motion.

I

The storm occurred on June 11, 2017, included hail and high winds, and caused severe property damage to buildings in Savanna Grove's community. Compl. ¶ 5 [ECF No. 1]; Answer and Countercl. ¶ 5 [ECF No. 6]. At the time, the buildings were insured under an Auto-Owners policy that covered the replacement cost of this type of loss. Compl. ¶ 8; Answer ¶ 8; Bergstrom Decl., Ex. A [ECF Nos. 21-1, 21-2]. Savanna Grove, through its management company, Associa, provided written notice of a claim to Auto-Owners the day of the storm. Compl. ¶ 18; Answer ¶ 18; Bergstrom Decl., Ex. B. [ECF No. 21-3 at 2]. Savanna Grove promptly hired three contractors to mitigate the storm damage: Solar Midwest, TC Deck, and Lincoln Hancock Restoration. Compl. ¶ 6; *see also* Mem. in Supp.

at 5 [ECF No. 20].  Savanna Grove subsequently hired Lincoln Hancock as general contractor to repair the damage.  Compl. ¶ 7; Answer ¶ 7.

Under the policy, Auto-Owners was required to process Savanna Grove's claim for replacement costs in two steps.  First, it was to have estimated and then issued payment for the actual cash value of the loss—that is, the replacement cost value minus some amount for depreciation.  Second, after repairs were complete, Auto-Owners was to have issued the amount withheld for depreciation, called the "recoverable depreciation" or "depreciation holdback."  Compl. ¶ 21; Answer ¶ 21; *see also* Mem. in Supp. at 4.  The policy caps the amount Auto-Owners must pay at either "[t]he cost to replace, on the same premises, the lost or damaged property with other property . . . [o]f comparable material and quality; and . . . [u]sed for the same purpose" or "[t]he amount you actually spend that is necessary to repair or replace the lost or damaged property," whichever is less. Bergstrom Decl., Ex. A [ECF No. 21-2 at 76].

On July 1, 2017, Auto-Owners sent a "catastrophe adjuster" to inspect the damage at Savanna Grove.  Bergstrom Decl., Ex. D at 1 [ECF No. 21-3 at 8].  The adjuster estimated the replacement cost to be $1,798,793.06, which included an actual cash value of $1,237,252.19, and recoverable depreciation of $561,540.87.  *Id.* at 108 [ECF No. 21-3 at 115].  Lincoln Hancock inspected the buildings and found additional damage not included in the adjuster's estimate.  Compl. ¶ 23; Answer ¶ 23; *see also* Mem. in Supp. at 6.  On October 11, 2017, Auto-Owners issued a revised estimate, which valued the replacement cost at $2,138,328.11; this amount included $1,354,868.83 in actual cash value and $783,459.28 in recoverable depreciation.  Bergstrom Decl., Ex. G at 128 [ECF No. 21-5 at

144]. After it began performing repairs, Lincoln Hancock discovered still more damage from the storm. Compl. ¶ 28; Answer ¶ 28; *see also* Mem. in Supp. at 6–7. Auto-Owners refused to pay additional costs to repair the newly discovered damage. Compl. ¶ 29–31; Answer ¶ 30–31; *see also* Mem. in Supp. at 7.[1]

On June 15, 2018, Savanna Grove made a written demand for appraisal pursuant to the policy to resolve the Parties' dispute about the amount of loss. Bergstrom Decl., Ex. H [ECF No. 21-5 at 181]; *see id.*, Ex. A [ECF No. 21-2 at 74]. The Parties named their appraisers, the appraisers selected an umpire, and an appraisal hearing was scheduled for February 2019. *Id.*, Ex. I [ECF No. 21-5 at 182–203]; Mem. in Supp. at 7. Before the appraisal hearing, in October 2018, Lincoln Hancock audited Auto-Owners' $2,138,328.11 revised estimate. Bergstrom Decl., Ex. G [ECF No. 21-5 at 150–177]. Lincoln Hancock determined that Auto-Owners' revised estimate should be increased by $496,092.12 to reflect changes in the pricing of labor and materials. *Id.* [ECF No. 21-5 at 151]. Lincoln Hancock also prepared its own estimate of the cost to repair the additional damage it discovered that was not included in Auto-Owners' prior estimates. *Id.* [ECF No. 21-5 at 174]*; see id.*, Ex. C at 1 [ECF No. 21-3 at 4]. Lincoln Hancock's estimate also included $73,029.60 for its project management or "supervisory fees." *Id.*, Ex. G [ECF No. 21-5 at

---

[1]     During 2017, Auto-Owners issued four payments to Savanna Grove. Bergstrom Decl., Exs. F, G [ECF No. 21-5 at 2, 15]; Bergstrom Supp. Decl., Ex. X [ECF No. 55-1 at 19]. The first three payments were for the actual cash value of damages in the revised estimate. *See* Compl. ¶ 21; Answer ¶ 21; Bergstrom Decl., Ex. F [ECF No. 21-5 at 2; Bergstrom Supp. Decl., Ex. X [ECF No. 55-1 at 19]. The fourth payment was for recoverable depreciation for repairs to skylights that had been completed by Solar Midwest. *See id.* The four payments totaled $1,336,769.79. *See* Bergstrom Decl., Ex. F [ECF No. 21-5 at 2].

173]. Lincoln Hancock's estimate produced a replacement cost value of $3,153,434.00, or an amount $1,015,105.89 greater than Auto-Owners' revised estimate. *See* Def. Br. at 4 [ECF No. 12], *Auto-Owners Ins. Co v. Savanna Grove Coach Homeowners' Assoc.* (*Savanna Grove I*), No. 19-cv-0220 (PJS/KMM) (D. Minn. Apr. 22, 2019); Bergstrom Decl., Ex. C.

On January 30, 2019, Auto-Owners filed suit in federal district court seeking a declaration that it was not required to pay the $496,092.12 in updated costs and $73,029.60 in supervisory fees in Lincoln Hancock's October 2018 estimate on the ground that Savanna Grove had not actually and necessarily incurred those expenses. *See* First Am. Compl. [ECF No. 9], *Savanna Grove I*. Savanna Grove moved to dismiss the case under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Def.'s Mot. to Dismiss [ECF No. 10], *Savanna Grove I*. Judge Patrick J. Schiltz granted Savanna Grove's motion, finding that Auto-Owners' claims were "not ripe for judicial determination" because the Parties were obligated to go to appraisal to determine the amount of loss. Order [ECF No. 24], *Savanna Grove I*. Judge Schiltz reasoned that the primary contention underlying Auto-Owners' case—that Savanna Grove had not shown it incurred the updated costs or supervisory fees—did not allow Auto-Owners to circumvent the appraisal process because the policy permitted Auto-Owners to pay the lesser of the appraisal award or the insured's actual incurred costs. *See* Tr. of Mot. Hr'g [ECF No. 29], *Savanna Grove I*.

An appraisal hearing was held on May 28, 2019. Compl. ¶ 52; Answer ¶¶ 51–52; *see* Bergstrom Decl., Ex. C. As of the hearing, Lincoln had completed its repairs to Savanna Grove's buildings. Bergstrom Decl., Ex. L. [ECF No. 21-5 at 214–15]. The day

after the hearing, the appraisal panel issued a unanimous award of $2,614,624.35, of which $1,699,505.95 was actual cash value and $915,118.40 was recoverable depreciation. *Id.*, Ex. K [ECF No. 21-5 at 210–12]. The appraisal panel made clear that the award was "subject to all policy terms and conditions including, but not limited to, the deductible(s) and replacement cost provisions." *Id.* Subtracting Auto-Owners' previous payments from the total appraisal award, $1,277,854.56 of the award remained unpaid.

Savanna Grove provided Auto-Owners with all final invoices for the project, which totaled $2,654,377.94, an amount greater than the appraisal award. *See id.*, Ex. O [ECF No. 21-5 at 223–24]; Bergstrom Supp. Decl., Ex. W [ECF No. 55-1 at 2–17]. After attempting unsuccessfully to persuade Auto-Owners to pay the outstanding amount of the appraisal award, *see id.*, Exs. A, M [ECF No. 21-2 at 74; ECF No. 21-5 at 217], Savanna Grove filed this action. Auto-Owners responded with counterclaims seeking declarations that it has no obligation to pay Savanna Grove for the updated costs and supervisory fees that it alleges Savanna Grove has not proven it incurred. Counter Cl. ¶¶ 22–31. Auto-Owners made two additional payments to Savanna Grove after this case was filed. On June 12, 2019, Auto-Owners issued a payment in the amount of $333,736.16. Bergstrom Decl., Ex. N [ECF No. 21-5 at 221]. On August 22, 2019, Auto-Owners issued a check to Savanna Grove for $2,308.57 for recoverable depreciation for deck repairs made by TC Deck. *Id.*, Ex. T [ECF No. 21-5 at 244]; *see also id.*, Ex. P [ECF No. 21-5 at 226–228].

Auto-Owners has made no further payments, leaving $941,809.83 of the appraisal award unpaid.[2]

II

A

There is subject-matter jurisdiction over this case based on diversity. 28 U.S.C. § 1332(a). Savanna Grove is a Minnesota nonprofit corporation with its principal place of business in Minnesota. *See* Office of the Minnesota Secretary of State, *Savanna Grove Homeowners' Association Business Record Details*, https://mblsportal.sos.state.mn.us/ Business/SearchDetails?filingGuid=143fe237-8dd4-e011-a886-001ec94ffe7f (last visited Jan. 29, 2020). Auto-Owners is incorporated under Michigan law and maintains its principal place of business there. *See* Compl. ¶ 2; Answer ¶ 2. Plainly, in view of the amounts Savanna Grove seeks to recover, the matter in controversy exceeds the sum or value of $75,000. Minnesota's substantive law therefore applies. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). Because the Court's role in this diversity action is to interpret the state law of Minnesota, it is bound by the decisions of the Minnesota Supreme Court. *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006). "When a state's highest court has not decided an issue, it is up to this court to predict how the state's highest

---

[2]    Auto-Owners has said several times that it disputes Lincoln Hancock's "updated costs" of $496,092.12 and "supervisory fees" of $73,029.60. *See*, *e.g.*, Bergstrom Decl., Ex. S [ECF No. 21-5 at 236]; Countercl. ¶¶ 14–16 [ECF No. 6]; Mem. in Opp'n at 1 [ECF No. 48]. These two categories total $569,121.72, or $372,688.11 less than the balance of the appraisal award. Auto-Owners has identified no other disputed amounts, so if there is a justification for Auto-Owners withholding the $372,688.11 difference, it has not been explained.

court would resolve that issue." *Continental Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1007 (8th Cir. 2006). When the decisions of a state's intermediate appellate court present "the best evidence of what state law is," those decisions constitute persuasive authority that this Court will follow. *Minn. Supply Co.*, 472 F.3d at 534 (citing *Continental Cas. Co.*, 462 F.3d at 1007).

Procedurally, it seems most appropriate to resolve Savanna Grove's motion to enter judgment as if it were a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Savanna Grove does not describe its motion that way. ECF No. 18. It does not call the motion one for summary judgment or cite Rule 56. At the same time, Savanna Grove identifies no other rule or procedure that should be applied to resolve its motion, and it does not appear to seek the resolution of disputed facts or suggest that the resolution of disputed facts is necessary for it to prevail. Auto-Owners says that Savanna Grove "is effectively seeking a summary judgment in its motion to confirm." Mem. in Opp'n at 24 [ECF No. 48]. And Auto-Owners couches its opposition in terms consistent with Rule 56. Its primary contention is that Savanna Grove "fails to identify specific facts within the record that would show as a matter of law" that it incurred replacement costs equal to or greater than the appraisal award. *Id.* at 5; *see also* Fed. R. Civ. P. 56(a). Adjudicating Savanna Grove's motion as one for summary judgment finds support in other cases from this District in which motions to confirm appraisal awards have been adjudicated under Rule 56. *See*, *e.g.*, *Clover Leaf Farm Condo. v. Country Mut. Ins. Co.*, No. 18-cv-2838 (DWF/BRT), 2019 WL 1025251, at *3 (D. Minn. Mar. 4, 2019).

Under the often-described standards governing Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

## B

Appraisal awards are reviewed under the Minnesota Uniform Arbitration Act, Minn. Stat. §§ 572B.01–.31. *See Herll v. Auto-Owners Ins. Co.*, 879 F.3d 293, 295 (8th Cir. 2018) ("The Minnesota Uniform Arbitration Act applies to the review and confirmation of appraisal awards in insurance disputes."); *K & R Landholdings, LLC v. Auto-Owners Ins.*, 907 N.W.2d 658, 664 (Minn. Ct. App. 2018) (rejecting the argument that appraisals are not arbitrations governed by the Minnesota Arbitration Act); *QBE Ins. Corp. v. Twin Homes of French Ridge Homeowners Ass'n*, 778 N.W.2d 393, 398 (Minn. Ct. App. 2010) ("Appraisal decisions are subject to . . . the arbitration statute."). The Act describes the process for obtaining a judgment on an award in straightforward terms that appear to leave a district court with not much to do: "After a party to the arbitration proceeding receives notice of an award, the party may file a motion with the court for an order confirming the award, at which time the court shall issue such an order unless the award is modified or corrected . . . or is vacated . . . ." Minn. Stat. § 572B.22. "Upon granting an order

confirming . . . an award, the court shall enter a judgment in conformity therewith." Minn. Stat. § 572B.25, subd. (a). Yet appraisals are different from arbitrations in important respects. *See Poehler v. Cincinnati Ins. Co.*, 899 N.W.2d 135, 148 n.4 (Minn. 2017) (Anderson, J., dissenting). In some cases, these differences may preclude the reflexive confirmation and entry of judgment on an appraisal award. Important here, "[a]ppraisers do not have the authority to determine liability under an insurance policy." *Auto-Owners Ins. Co. v. Second Chance Invs., LLC*, 812 N.W.2d 194, 199 (Minn. Ct. App. 2012), *aff'd*, 827 N.W.2d 766 (Minn. 2013). "[A]ppraisal proceedings and the appraisers' task are distinct from judicial and arbitration proceedings, because appraisers 'make valuation determinations,' but are not empowered to decide questions of law." *Id.*, 812 N.W.2d at 199 (quoting *Quade v. Secura Ins.*, 792 N.W.2d 478, 483 (Minn. Ct. App. 2011), *rev'd on other grounds*, 814 N.W.2d 703 (Minn. 2012)). In general, "appraisers have authority to decide the 'amount of loss' but may not construe the policy or decide whether the insurer should pay." *Quade*, 814 N.W.2d at 706.

Here, Auto-Owners opposes the entry of judgment in Savanna Grove's favor because, it says, Savanna Grove has failed to establish as a matter of law that it actually and necessarily spent an amount to repair or replace its damaged property that is equal to or greater than the amount of the appraisal award. If this argument were correct, it would be improper to award Savanna Grove the judgment it seeks. A brief explanation shows why this is so. Auto-Owners agrees Savanna Grove suffered a loss insured under the policy. Mem. in Opp'n at 2. Though the policy says Auto-Owners is not obligated to "pay on a replacement cost basis for any loss or damage . . . [u]ntil the lost or damaged property

is actually repaired or replaced," Bergstrom Decl., Ex. A [ECF No. 21-2 at 76], the record

shows that this condition has been met, *see id.*, Ex. L. [ECF No. 21-5 at 214–15], and Auto-

Owners nowhere suggests it hasn't. Finally, Auto-Owners "accepts the appraisal panel's

valuation of [Savanna Grove's] replacement costs." Mem. in Opp'n at 1. These

concessions leave a narrow issue in dispute, and it concerns the following policy term:

> (c)　　We will not pay more for loss or damage on a replacement cost basis than the least of:
>
> > (i)　　The cost to replace, on the same premises, the lost or damaged property with other property:
> >
> > > i.　　Of comparable material and quality; and
> > >
> > > ii.　　Used for the same purpose; or
> >
> > (ii)　　The amount you actually spend that is necessary to repair or replace the lost or damaged property.

Bergstrom Decl., Ex. A [ECF No. 21-2 at 76]. The Parties agree that the appraisal award

establishes the "cost to replace" described in paragraph (c)(i). The Parties' disagreement

concerns paragraph (c)(ii). Again, quoting Auto-Owners, it says Savanna Grove "fails to

identify specific facts within the record that would show as a matter of law that it has

proven that the amount it actually and necessarily spent or incurred aligns with the principal

amount of the judgment it seeks." Mem. in Opp'n at 5. Savanna Grove disagrees. It says

it "provided its final invoices showing the amounts [it] incurred," and that "[n]othing more

is relevant to or needed under [the] Policy for release of the remaining funds owed." Reply Mem. at 5 [ECF No. 54].[3]

The record Savanna Grove submitted in support of its motion is extensive and shows that Savanna Grove actually and necessarily incurred an amount greater than the appraisal award to repair or replace its damaged property. The record includes all invoices Savanna Grove received from Solar Midwest, TC Deck, and Lincoln Hancock. Bergstrom Supp. Decl. ¶ 2, Ex. W. These invoices show that Savanna Grove actually incurred costs totaling $2,654,377.94, an amount $39,753.59 greater than the appraisal award of $2,614,624.35. *Id.*[4] The record also includes extensive documentation of Lincoln Hancock's project management hours and logs showing daily activities on the project. Bergstrom Decl., Ex. E [ECF No. 21-4 at 2–249].

---

[3] A motion to vacate an arbitration award "must be filed within 90 days" after certain triggering events. Minn. Stat. § 572B.23, subd. (b). Savanna Grove points out that Auto-Owners filed no motion to vacate the appraisal award and, citing § 572B.23, subdivision (b), argues that Auto-Owners' failure to file that motion requires judgment to be entered on the appraisal award. Mem. in Supp. at 18–19. As noted above, however, Auto-Owners does not challenge the appraisal award; it opposes Savanna Grove's motion on different grounds. For this reason, Auto-Owners' failure to file a motion to vacate the appraisal does not justify the entry of judgment for Savanna Grove. *See Trout Brook South Condo. Ass'n v. Harleysville Worcester Ins. Co.*, 995 F. Supp. 2d 1035, 1040–41 (D. Minn. 2014) (holding that § 572B.23, subdivision (b)'s 90-day rule did not apply where insurer did not challenge appraisal award).

[4] There is one error in the supplemental declaration of Savanna Grove's counsel. The table in paragraph 2 of that declaration says that Lincoln Hancock billed a total of $2,505,827.37 for its work. This figure omits one invoice dated February 21, 2018, in the amount of $111,177.78. Regardless, the total amount appearing in the table's bottom line is correct.

Auto-Owners' position regarding why this information is insufficient and what additional information Savanna Grove must produce to establish the amount it actually and necessarily spent to repair or replace its damaged property has shifted somewhat in the course of the Parties' dispute. In early July 2019, after Savanna Grove provided it with Lincoln Hancock's final June 19 invoice, Auto-Owners demanded that Savanna Grove produce "copies of cancelled checks" showing it had paid Lincoln Hancock for all its work, evidently taking the position that Savanna Grove must actually pay Lincoln Hancock before Auto-Owners would indemnify Savanna Grove. *Id.*, Ex. Q [ECF No. 21-5 at 220]. Auto-Owners also demanded "back-up documentation" from Lincoln Hancock to support "material and labor price increases" and its project-management fees. *Id.* Auto-Owners specifically demanded that Lincoln Hancock support its project-management fees by producing "back-up documentation supporting those expenses, including time sheets/cards, payroll records or any other documentation that would substantiate that expense." *Id.* After Savanna Grove objected, Auto-Owners dropped its request that Savanna Grove "show that [it] actually paid" Lincoln Hancock. *Id.*, Ex. S [ECF No. 21-5 at 236]. Auto-Owners persisted with its demand that Lincoln Hancock produce evidence supporting its charges. *Id.* Auto-Owners explained it was concerned that Lincoln Hancock had "received hefty discounts in the cost of the materials due to 'volume' purchases and/or its long-standing relationship with the vendors" that were not passed on to Savanna Grove. *Id.* Regarding project-management fees, Auto-Owners demanded "documentation showing the expense was legitimate and incurred." *Id.* Consistent with the scope of these pre-suit demands, Auto-Owners in this case subpoenaed Lincoln Hancock to produce a

large volume of documents from its work on the Savanna Grove project. Cottier Decl., Ex. B [ECF. No. 36-1 at 6–10]. Auto-Owners' demands of Lincoln Hancock in its subpoena include, for example, "an unredacted copy of the entire construction file relating to the Savanna Grove" project and "all correspondence, emails, [and] text messages between Savanna Grove" and Lincoln Hancock and between Savanna Grove's counsel and Lincoln Hancock. *Id.* [ECF No. 36-1 at 10].

The gist of Auto-Owners' position is clear enough: Auto-Owners refuses to accept that the invoices and other supporting documentation Savanna Grove has submitted are enough to trigger its payment obligation under the policy because it doubts Lincoln Hancock's charges were bona fide. Recognizing that doubts do not create a triable controversy, Auto-Owners identifies legal authorities and factual allegations that it says warrant denial of Savanna Grove's motion, and it has filed a declaration under Fed. R. Civ. P. 56(d) requesting time to pursue full-blown discovery on these issues.

The legal authorities Auto-Owners cites do not justify denying Savanna Grove's motion. Auto-Owners relies primarily on the policy, proceedings in *Savanna Grove I*, and a case decided under Indiana law. The policy terms Auto-Owners identifies generally describe an insured's duties in the event of loss or damage to covered property:

> **e.**   At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.
>
> **f.**   Permit us to inspect the property and records proving the loss or damage.
>
> **g.**   If requested, permit us to question you under oath at such times as may be reasonably required about any

> matter relating to this insurance of your claim, including
> your books and records. . . .

> **i.** Cooperate with us in the investigation or settlement of
> the claim.

Mem. in Opp'n at 5–6; Bergstrom Decl., Ex. A [ECF No. 21-2 at 74]. Auto-Owners says

that Savanna Grove has "fail[ed] to comply with these provisions," but it doesn't say how.

Mem. in Opp'n at 5–6. Auto-Owners does not say, for example, that it requested but

Savanna Grove did not produce an inventory of its "damaged and undamaged property" or

that Savanna Grove has refused Auto-Owners permission "to inspect the property and

records proving the loss or damage." *See id.* Also, these obligations—to permit a property

inspection and to produce an inventory or evidence showing "loss or damage"—address

an issue that is different from whether Savanna Grove has shown it actually incurred costs

to repair or replace damaged property (the issue raised by Savanna Grove's motion).

Nothing shows that Savanna Grove refused to comply with a request for an examination

under oath. The cooperation provision may be broad enough to encompass Savanna

Grove's duty to show the costs it incurred to repair or replace its damaged property, but

it's also too generic to be of much help in adjudicating Savanna Grove's motion. What the

cooperation term requires of Savanna Grove in this context is not obvious. An insured's

duty to cooperate with an insurer's investigation of the insured's loss "is activated only if

the company's request for cooperation is reasonable, precise, and definite." Allan D.

Windt, *Insurance Claims & Disputes: Representation of Insurance Companies & Insureds*

§ 3:2 (6th ed. 2013) (updated Apr. 2019) ("Windt"). Here, Auto-Owners' requests are

quite broad and directed almost entirely at Lincoln Hancock.[5]  Auto-Owners cites no case

finding a cooperation-provision violation on similar facts, nor does it suggest that Lincoln

Hancock is bound by the policy's cooperation term.

Auto-Owners suggests that comments made by Judge Schiltz during the hearing on

the motion to dismiss *Savanna Grove I* support its position.  Specifically, Auto-Owners

quotes an exchange during which Judge Schiltz observed that Auto-Owners need not "cut

a check until [Savanna Grove] take[s] the further step of showing [Auto-Owners] that the

money has been spent."  Mem. in Opp'n at 8.  Judge Schiltz's comments were correct.

There is no doubt or dispute about that.  Savanna Grove has never denied it must show

"that the money has been spent."  Savanna Grove admitted as much during the hearing

before Judge Schiltz, *id.*, and it admits it here, *e.g.*, Mem. in Supp. at 21–22.  The issue

here isn't whether Savanna Grove must show the amount it incurred to repair or replace its

damaged property.  The issue is whether the information Savanna Grove has submitted is

enough to show the amount it incurred, and this issue was not addressed or resolved in

*Savanna Grove I.*

Auto-Owners cites *Weidman v. Erie Ins. Grp.*, 745 N.E.2d 292 (Ind. Ct. App. 2001),

as support for denying Savanna Grove's motion, but this case isn't like *Weidman*.  In

*Weidman*, the insured's home was substantially destroyed by fire.  *Id.* at 295.  Under the

policy at issue in *Weidman* (as under the policy at issue here), the insurer, Erie, was

---

[5]     If the appraisal process is intended "to create a method of resolving disputes that
avoids the delay and expense of litigation," Windt § 9.33, the full-blown discovery Auto-
Owners seeks would seriously undermine that goal.

required to pay the lesser of the replacement cost or "the amount actually and necessarily spent to repair or replace the damaged dwelling." *Id.* After obtaining an appraisal award establishing both the replacement cost and actual cash value, the insured, Weidman, decided to perform "the repair work himself, rather than hiring a general contractor." *Id.* at 295–96. Erie requested "substantiation of the amounts actually spent," but Weidman refused, prompting Erie to withhold twenty percent of the appraisal amount. *Id.* at 296. Weidman then sued to recover the amount withheld and other damages, including for bad faith. *Id.* In affirming the district court's denial of Weidman's summary-judgment motion, the Court of Appeals of Indiana explained that Weidman's failure to provide Erie with any information regarding his costs left an issue of fact for trial. *Id.* at 298–99. *Weidman* does not have much to say about this case. It is distinguishable because Weidman provided no information to show his costs; he refused Erie's requests outright. *Id.* at 296. Here, Savanna Grove has submitted a large volume of information, including its contractors' final invoices. *Weidman* also seems distinguishable because Weidman's decision to perform the repair work himself made him both insured and general contractor. Weidman's obligations under the policy applied to both roles. Here, Savanna Grove retained a general contractor, and Lincoln Hancock is not a party to the policy. Finally, *Weidman* does not address what information an insured must submit to substantiate its costs. It held only that identifying no information leaves a fact issue open for trial.

The factual allegations Auto-Owners has advanced do not identify a triable issue. Auto-Owners asserts that the identity of specific figures in the appraisal award and Lincoln Hancock's final invoice "suggests that the amount Savanna actually and necessarily

incurred was less than that figure, or the amount actually and necessarily spent is unknown, and simply pegged to match the Appraisal Award." Mem. in Opp'n at 10. Auto-Owners doesn't say why, or cite evidence showing this is so. There are other reasons why these numbers might align. The appraisal process included evidence of Lincoln Hancock's costs and estimates, and the appraisal award was based on these figures. Perhaps Lincoln Hancock, recognizing that the appraisal award set a ceiling on its charges, wrote down certain items to match the appraisal. The point is that Auto-Owners identifies no evidence supporting its interpretation of Lincoln Hancock's final invoice or showing why its interpretation is more likely than any other, and supposition about why the numbers align does not create a genuine fact dispute. *See McConnell v. Anixter, Inc.*, 944 F.3d 985, 988 (8th Cir. 2019) (recognizing that conjecture and speculation are insufficient to show a fact dispute). This isn't a case where, for example, the insurer can point to evidence showing that an insured opted to repair or replace damaged property appraised at a higher cost with less expensive materials. *Cf. Estes v. State Farm Fire and Cas. Co.*, 358 N.W.2d 123, 124 (Minn. Ct. App. 1984) (recounting that insured, after receiving estimate from insurer for replacing slate roof, replaced the roof with cheaper materials but billed insurer for amount of estimate). The possibility that Lincoln Hancock "received hefty discounts . . . due to 'volume' purchases" lacks citation to record evidence. *See* Bergstrom Decl., Ex. S. If it were supported by evidence, the allegation's materiality is not explained. For example, Auto-Owners identifies no policy term that might preclude a third party from recovering profits above a certain margin for repairing or replacing an insured's damaged property.

Auto-Owners filed a declaration under Fed. R. Civ. P. 56(d) asserting it "has insufficient facts and information that are needed through discovery to oppose Savanna's request for judgment," Ayers Decl. ¶ 4 [ECF No. 50], but this declaration does not justify denying or deferring Savanna Grove's motion. To warrant additional discovery under Rule 56(d), a non-movant "must show: (1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are essential to resist the summary judgment motion." *Johnson v. Moody*, 903 F.3d 766, 772 (8th Cir. 2018) (citation and internal quotations omitted). Rule 56(d) cannot be used to pursue a hope that something may turn up. *Id.* Auto-Owners' declaration does not identify "specific facts"; it repeats Auto-Owners' comprehensive discovery demands of both Savanna Grove and Lincoln Hancock. Recall that these demands include "an unredacted copy of the entire construction file relating to the Savanna Grove" project and "all correspondence, emails, [and] text messages between Savanna Grove" and Lincoln Hancock and between Savanna Grove's counsel and Lincoln Hancock. Cottier Decl., Ex. B [ECF No. 36-1 at 10]. Beyond these all-encompassing requests, Auto-Owners' declaration describes the history of the claim and the Parties' communications but offers no justification to deny Savanna Grove's motion that hasn't been addressed already.[6]

*

---

[6]     Auto-Owners' counterclaims include allegations that Savanna Grove has failed to show that it actually incurred an amount equal to or greater than the appraisal award, but add nothing to the arguments Auto-Owners advanced in its submissions opposing the motion. The entry of judgment on Savanna Grove's claim means Auto-Owners' counterclaims must be dismissed.

No doubt the prompt confirmation of an appraisal award or early entry of judgment on an insured's claim will be inappropriate in some cases, but this is not one of them. Savanna Grove has submitted evidence establishing the costs it incurred to replace or repair its damaged property were greater than the replacement cost as determined by the appraisal, and Auto-Owners has not shown that genuine issues of material fact exist regarding Savanna Grove's claim. Therefore, under the policy, Auto-Owners must tender payment in the amount of the appraisal award. Judgment will be entered for Savanna Grove with respect to the remaining $941,809.83 of the appraisal award.

C

Savanna Grove seeks pre-award interest. Mem. in Supp. at 13–14, 22–28. Under Minnesota law, an insured is entitled to pre-award interest on an appraisal award. *Poehler*, 899 N.W.2d at 141. "Except as otherwise provided by contract or allowed by law," pre-award interest on an appraisal award begins accruing "from the time of the commencement of the action or a demand for arbitration, or the time of a written notice of claim, whichever occurs first[.]" Minn. Stat. § 549.09, subd. 1(b). "For a judgment or award over $50,000, . . . the interest rate shall be ten percent per year until paid." *Id.*, subd. 1(c)(2). Subdivision 1(b) further provides that interest generally will not be awarded on awards for future damages or punitive damages. *Id.*, subd. 1(b)(2)–(3). In determining the amount of pre-award interest, insurers should receive credit for pre-appraisal payments against the amount on which pre-award interest accrues. *Creekview of Hugo Ass'n, Inc. v. Owners Ins. Co.*, 386 F. Supp. 3d 1059, 1071 (D. Minn. 2019). Pre-award interest accrues on insurance

appraisal awards regardless of whether an insurer has committed wrongdoing or breached its contractual duties. *Poehler*, 899 N.W.2d at 141.

Savanna Grove argues that the correct start date for the pre-award interest calculation is June 11, 2017, the date on which it submitted written notice of its claim to Auto-Owners. Mem. in Supp. at 22; *see* Bergstrom Decl., Ex. B. On that date, Savanna Grove's insurance manager informed Auto-Owners via e-mail as follows:

> I need to open a claim for this community. Below are the details:
>
> DOL: 6/11/17
> Cause: Hail
>
> Damage to siding, metals [sic] windows, roofs in community. Attached are a few photos from this morning.
>
> Please have the assigned adjustor contact me and let me know the claim number once you have record of it.

Bergstrom Decl., Ex. B. Auto-Owners does not dispute Savanna Grove's entitlement to pre-award interest and does not directly dispute this start date but incorrectly asserts that the start date provided by Savanna Grove is the date it demanded appraisal, June 15, 2018. Mem. in Opp'n at 22; *see* Bergstrom Decl., Ex. H.

Savanna Grove's written notice of its claim, as described above, is sufficient to trigger pre-award interest. *See Creekview*, 386 F. Supp. 3d at 1067–71. "Under Minnesota law, a written notice of claim need not identify a specific amount of damages sought to trigger pre-award interest; rather, the issue is whether the defendant 'could have determined the amount of its potential liability from a generally recognized objective standard of measurement.'" *Id.* at 1068 (quoting *Indep. Sch. Dist. 441 v. Bunn-O-Matic Corp.*, No.

C0-96-594, 1996 WL 689768, at *10 (Minn. Ct. App. Dec. 3, 1996) (quoting *Solid Gold Realty, Inc. v. Mondry*, 399 N.W.2d 681, 684 (Minn. Ct. App. 1987))). Savanna Grove's email notified Auto-Owners of its loss, the fact that it was making a claim under the policy, and the cause of the damage. It also indicated that the damage affected the townhome community, listed various types of damage, and included photographs of the damage. Based on that information, Auto-Owners could have determined its potential liability.

Accordingly, pre-award interest will be awarded for the time period from June 11, 2017, until the date of the appraisal award. However, Auto-Owners' pre-appraisal payments, totaling $1,336,769.79, will be credited against the amount of the appraisal award in the calculation of pre-award interest. *See id.* at 1071–72.

D

Savanna Grove also seeks post-award interest pursuant to Minn. Stat. § 549.09, subd. 2, and post-judgment interest pursuant to 28 U.S.C. § 1961(a). Mem. in Supp. at 28–29. Auto-Owners does not dispute that "interest is awarded in the event judgment is entered" but provides no further briefing on this issue other than to maintain its position that an award of interest is "premature" because judgment should not be entered on the appraisal award. Mem. in Opp'n at 22.

"Minnesota statutes distinguish between prejudgment interest and postjudgment interest." *Alby v. BNSF Ry. Co.*, 934 N.W.2d 831, 833 (Minn. 2019). Section 549.09, subdivision 1(a), provides for the accrual of interest "from the time of the verdict, award, or report until judgment is finally entered[.]" Minn. Stat. § 549.09, subd. 1(a). "Subdivision 2 creates a judgment creditor remedy and provides that '[d]uring each

22

calendar year, interest shall accrue on the unpaid balance of the judgment or award from the time that it is entered or made until it is paid, at the annual rate provided in subdivision 1.'" *Alby*, 934 N.W.2d at 833 (citing Minn. Stat. § 549.09, subd. 2).  As with pre-award interest, the annual interest rate under both subdivision 1(a) and subdivision 2 for a judgment or award over $50,000 is 10%.  *See* Minn. Stat. § 549.09, subds. 1(c)(2), 2. Federal law provides for post-judgment interest "on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  Post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  *Id.* Interest is computed daily to the date of payment and compounded annually.  28 U.S.C. § 1961(b).  "In a diversity action, state law governs prejudgment interest; federal law governs postjudgment interest."  *Happy Chef Sys., Inc. v. John Hancock Mut. Life Ins. Co.*, 933 F.2d 1433, 1435 (8th Cir. 1991).

As applied here, post-award interest is understood to mean interest beginning upon the issuance of the appraisal award, and post-judgment interest is understood to mean interest beginning upon the entry of judgment.  With respect to post-award interest, Minn. Stat. § 549.09 applies.  Savanna Grove requests post-award interest under subdivision 2 of the statute, which provides that interest shall accrue "from the time that [the judgment or award] is entered or made *until it is paid*[.]"  Minn. Stat. § 549.09, subd. 2 (emphasis added).  Because federal law governs post-judgment interest, interest from the entry of judgment until payment is not available to Savanna Grove under section 549.09.  Rather,

post-award interest is more properly awarded here under subdivision 1(a) of section 549.09, which provides for interest "from the time of the verdict, award, or report *until judgment is finally entered*[.]" Minn. Stat. § 549.09, subd. 1(a) (emphasis added). Accordingly, post-award interest will be calculated at 10% on the unpaid balance of the entire appraisal award from the time of the appraisal award until entry of judgment. Auto-Owners' post-appraisal payments, totaling $336,044.73, will be credited against the amount of the appraisal award. Additionally, pursuant to 28 U.S.C. § 1961, post-judgment interest will be calculated at the federal rate upon entry of judgment from the date of the entry of judgment until the date the remainder of the appraisal award is paid.

### E

Savanna Grove also seeks costs and attorneys' fees under Minn. Stat. §§ 572B.25(b) and (c), 549.02, and 549.04. Mem. in Supp. at 29–32. Auto-Owners opposes this request on the ground that Savanna Grove cannot prevail on its current motion and, therefore, is not entitled to an award of costs or attorney fees at this time. Mem. in Opp'n at 22–23. As noted above, the Minnesota Uniform Arbitration Act applies to the review of appraisal awards, and as the prevailing party in this matter, Savanna Grove is entitled to an award of attorneys' fees and costs under Minn. Stat. §§ 572B.25, 549.02, and 549.04. But pursuant to Fed. R. Civ. P. 54(d)(2)(B), the Court will not grant the motion now. That rule provides that, "[u]nless a statute or a court order provides otherwise, the motion [for attorneys' fees] must . . . state the amount sought or provide a fair estimate of it[.]" As Savanna Grove acknowledges, it has yet to do either, but states that its requests will be proven "at the appropriate time" by supplemental memoranda and accompanying declarations and

exhibits. Mem. in Supp. at 32. Accordingly, Savanna Grove's request for attorneys' fees and costs will be denied without prejudice to Savanna Grove's right to refile when it is prepared to make the required showing.[7]

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED** that Plaintiff Savanna Grove Coach Homeowners' Association's Motion to Confirm the Appraisal Award, Enter Judgment, and for Interest, Costs, and Fees [ECF No. 18] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.      The appraisal award's determinations that the actual cash value of the loss is $1,699,505.95 and the replacement cost of the loss is $2,614,624.35 are **CONFIRMED**;

2.      Plaintiff's motion for summary judgment with respect to its claims for a declaratory judgment (Count I) and for breach of contract (Count II) is **GRANTED**;

3.      Defendant's counterclaims for declaratory judgments (Counterclaims I and II) are **DISMISSED WITH PREJUDICE**;

---

[7]      Non-dispositive motions remain pending in this case before Magistrate Judge Tony N. Leung. These include Savanna Grove's motions for leave to amend its complaint to add a claim for "statutory bad faith pursuant to Minn. Stat. § 604.18," ECF No. 27, and Savanna Grove's motion for a protective order, to quash the subpoena served upon Lincoln Hancock, and for sanctions, ECF No. 33. The disposition of the motions addressed in this order would appear to render Savanna Grove's motions for a protective order and to quash the subpoena moot. Regardless, what effect, if any, this order has on the pending non-dispositive motions is within Judge Leung's able authority to determine in the first instance.

4. Plaintiff is entitled to the unpaid balance of the appraisal award in the amount of $941,809.83;

5. Plaintiff is entitled to pre-award interest in the amount of $282,072.37;

6. Plaintiff is entitled to post-award interest in the amount of $22,916.30 through August 22, 2019, plus an additional $258.03 per day from August 23, 2019, until the entry of judgment;

7. Plaintiff is entitled to post-judgment interest from the date of the entry of judgment until the date the balance of the appraisal award is paid by Defendant in an amount to be calculated in accordance with 28 U.S.C. § 1961 upon entry of judgment; and

8. Plaintiff's request for attorneys' fees and costs is **DENIED WITHOUT PREJUDICE** to Plaintiff's ability to renew that motion at a later time.


Dated:  January 29, 2020          s/ Eric C. Tostrud
                                  Eric C. Tostrud
                                  United States District Court