UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| Savanna Grove Coach Homeowners' Association, | Case No. 19-cv-1513 (ECT/TNL) |
|---|---|
| Plaintiff, | |
| v. | **ORDER** |
| Auto-Owners Insurance Company, | |
| Defendant. | |

---

Adina R. Bergstrom, Brenda M. Sauro, and Kayla Marie Cottier, Sauro & Bergstrom, PLLC, 992 Inwood Avenue North, Oakdale, MN 55128 (for Plaintiff); and

Bradley J. Ayers, Eric G. Nasstrom, and Nathaniel Richard Greene, Morrison Sund PLLC, 5125 County Road 101, Suite 200, Minnetonka, MN 55345 (for Defendant).

---

This matter comes before the Court on Plaintiff Savanna Grove Coach Homeowners' Association's ("Savanna Grove") Motion for Leave to Amend the Complaint (ECF No. 27) and Motions for Protective Order, to Quash Subpoena, and Sanctions (ECF No. 33).

## I. BACKGROUND

In brief, Savanna Grove, "the corporate representative of a townhome community in Blaine, Minnesota, that suffered significant property damage in a June 2017 storm, brought this case against its insurer, [Defendant Auto-Owners Insurance Company ('Auto-Owners')], to recover policy benefits it claims Auto-Owners must pay for the storm damage and additional amounts." *Savanna Grove Coach Homeowners' Ass'n v. Auto-*

1

*Owners Ins. Co.*, No. 19-cv-1513 (ECT/TNL), 2020 WL 468905, at *1 (D. Minn. Jan. 29, 2020) [hereinafter *Savanna Grove Op.*].[1] It is not disputed that Savanna Grove was "insured under an Auto-Owners policy that covered the replacement cost of this type of loss." *Id.* And, "Auto-Owners agrees Savanna Grove suffered a loss insured under the policy." *Id.* at *5.

> Under the policy, Auto-Owners was required to process Savanna Grove's claim for replacement costs in two steps. First, it was to have estimated and then issued payment for the actual cash value of the loss—that is, the replacement cost value minus some amount for depreciation. Second, after repairs were complete, Auto-Owners was to have issued the amount withheld for depreciation, called the "recoverable depreciation" or "depreciation holdback."

*Id.* at *1. The policy caps the amount Auto-Owners must pay at the *lesser* of (i) "the cost to replace, on the same premises, the lost or damaged property with other property of comparable material and quality; and used for the same purpose," *or* (ii) "the amount [Savanna Grove] actually spend[s] that is necessary to repair or replace the lost or damaged property." *Id.* (quotations omitted).

"On June 15, 2018, Savanna Grove made a written demand for appraisal pursuant to the policy to resolve the Parties' dispute about the amount of loss." *Id.* at *2. "An appraisal hearing was held on May 28, 2019." *Id.* at *3. "The day after the hearing, the appraisal panel issued a unanimous award of $2,614,624.35, of which $1,699,505.95 was actual cash value and $915,118.40 was recoverable depreciation." *Id.* "Subtracting Auto-

---

[1] In setting forth the background of this matter, the Court borrows heavily from the recently issued decision of the district court.

Owners' previous payments from the total appraisal award, $1,277,854.56 of the award remained unpaid." *Id.*

"Savanna Grove provided Auto-Owners with all final invoices for the project, which totaled $2,654,377.94, an amount greater than the appraisal award." *Id.*

> After attempting unsuccessfully to persuade Auto-Owners to pay the outstanding amount of the appraisal award, Savanna Grove filed this action. Auto-Owners responded with counterclaims seeking declarations that it has no obligation to pay Savanna Grove for the updated costs and supervisory fees that it alleges Savanna Grove has not proven it incurred.

*Id.* (citations omitted).

"Auto-Owners made two additional payments to Savanna Grove after this case was filed," which "le[ft] $941,809.83 of the appraisal award unpaid." *Id.* (footnote omitted).

## II. PROCEDURAL HISTORY

Shortly before it filed the instant motions, "Savanna Grove . . . filed a motion seeking confirmation of the appraisal award and entry of a judgment in its favor that would include the unpaid amount of the appraisal award, interest of three types, and attorneys' fees and costs." *Id.* at *1. In essence, "Savanna Grove . . . [argued] it ha[d] triggered Auto-Owners' obligation to pay the unpaid amount of the appraisal award as a matter of law by submitting evidence showing that it has incurred repair and replacement costs greater than the appraisal award." *Id.* "Auto-Owners accept[ed] the appraisal award but argue[d] that judgment . . . [could not] be entered because Savanna Grove's evidence [wa]s insufficient and d[id] not eliminate fact questions concerning the legitimacy of its general contractor's invoices." *Id.* at *1; *see also id.* at *5 ("Auto-Owners opposes the entry of judgment in

3

Savanna Grove's favor because, it says, Savanna Grove has failed to establish as a matter of law that it actually and necessarily spent an amount to repair or replace its damaged property that is equal to or greater than the amount of the appraisal award.").

The district court treated Savanna Grove's motion as a motion for summary judgment under Federal Rule of Civil Procedure 56. *Id.* at *3-4. There was no dispute that the appraisal award "establishe[d] the 'cost to replace.'" *Id.* at *5. The dispute was over the amount Savanna Grove actually and necessarily incurred. *Id.* The district court concluded that the "extensive" record submitted by Savanna Grove in support of its motion "show[ed] that Savanna Grove actually and necessarily incurred an amount greater than the appraisal award to repair or replace its damaged property," including invoices, documentation of project-management hours, and daily-activity logs. *Id.*

The district court was unpersuaded by Auto-Owners' contention that Savanna Grove's documentation was insufficient or that it needed additional discovery to respond to the motion. *Id.* at *6-8. The district court determined that Auto-Owners had not met its burden under Rule 56(d) to identify specific facts it hoped to obtain from discovery. *Id.* at *8.

The district court concluded that "Savanna Grove ha[d] submitted evidence establishing the costs it incurred to replace or repair its damaged property were greater than the replacement cost as determined by the appraisal, and Auto-Owners ha[d] not shown that genuine issues of material fact exist regarding Savanna Grove's claim." *Id.* at *8. Accordingly, under the policy, Auto-Owners was required to "tender payment in the amount of the appraisal award," and Savanna Grove was entitled to judgment "with respect

4

to the remaining $941,809.83 of the appraisal award." *Id.*

In closing, the district court noted that its decision "would appear to render Savanna Grove's motions for a protective order and to quash the subpoena moot," but left it to the undersigned to determine what effect, if any, the decision had on the instant motions. *Id.* at *10 n.7.

### III. MOTIONS FOR PROTECTIVE ORDER, TO QUASH SUBPOENA, AND SANCTIONS

Savanna Grove moves for a protective order in response to certain discovery requests served by Auto-Owners and to quash a subpoena Auto-Owners served on Lincoln Hancock Restoration, Savanna Grove's general contractor. Collectively, the discovery sought by Auto-Owners concerns certain categories of expenses, the value of which Savanna Grove maintains was conclusively resolved by the appraisal panel. In the event the Court grants the relief requested, Savanna Grove also seeks payment of its expenses, including attorney fees. *See* Fed. R. Civ. P. 26(c)(3), 37(a)(5).

Auto-Owners maintains that it is entitled to this discovery because it is relevant to the amount Savanna Grove "actually and necessarily spent to restore its property – the second figure needed to determine Auto-Owners' liability." (ECF No. 42 at 1.) In the event the Court denies the relief requested by Savanna Grove, Auto-Owners likewise seeks its expenses, including attorney fees. *See* Fed. R. Civ. P. 26(c)(3), 37(a)(5).

As stated above, the district court recently determined that "Savanna Grove actually and necessarily incurred an amount greater than the appraisal award to repair or replace its damaged property" and is entitled to the unpaid balance of the appraisal award, granting

summary judgment in favor of Savanna Grove on its claims. *Savanna Grove Op.*, 2020 WL 468905, at *5, 10. With respect to "Auto-Owners' counterclaims . . . that Savanna Grove has failed to show that it actually incurred an amount equal to or greater than the appraisal award," the district court correspondingly determined that "[t]he entry of judgment on Savanna Grove's claims means Auto-Owners' counterclaims must be dismissed," dismissing such claims with prejudice. *Id.* at *8 n.6, 10. In doing so, the district court rejected Auto-Owners' contention that "the invoices and other supporting documentation Savanna Grove ha[d] submitted" were not "enough to trigger its payment obligation under the policy" and more discovery was needed because it did not have sufficient facts and information. *Id.* at *6, 8.

The Court concludes that the parties' dispute over discovery directed at the amount Savanna Grove actually and necessarily spent to restore its property is moot in light of the district court's ruling. *See id.* at *10 n.7. Therefore, Savanna Grove's motion, and the parties' dueling requests for expenses, are denied as moot.

## IV. MOTION FOR LEAVE TO AMEND

Savanna Grove moves for leave to amend its Complaint to add a claim for bad faith under Minn. Stat. § 604.18. Auto-Owners opposes the motion on grounds of futility. Auto-Owners also requests that certain documents filed by Savanna Grove in support of its motion, namely, the declaration of counsel and the exhibits attached thereto "beyond the proposed [amended c]omplaint," be stricken as improper. (Def.'s Mem. in Opp'n at 4, ECF No. 41.)

**A. Legal Standard**

The parties agree that Federal Rules of Civil Procedure 8 and 15, rather than § 604.18's procedural subdivision, subd. 4(a), apply in this case.[2] *See Selective Ins. Co. of S. Carolina v. Sela*, 353 F. Supp. 3d 847, 855-63 (D. Minn. 2018) [hereinafter *Sela*]. With the exception of amendments as a matter of course, the Federal Rules of Civil Procedure permit a party to "amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Rules further provide that leave shall be freely given "when justice so requires." *Id.* There is, however, "no absolute right to amend" and a finding of undue delay, bad faith, dilatory motive, undue prejudice to the non-moving party, or futility may be grounds to deny a motion to amend. *Doe v. Cassel*, 403 F.3d 986, 990-91 (8th Cir. 2005). "Fundamentally, 'the grant or denial of an opportunity to amend is within the discretion of the District Court.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 963 (8th Cir. 2015) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**B. Futility**

While Rule 15(a)(2) provides that "leave to amend shall be given freely when justice so requires, a district court properly denies leave when a proposed amendment would be futile." *Lansing v. Wells Fargo Bank, N.A.*, 894 F.3d 967, 973-74 (8th Cir. 2018) (citation omitted); *see also Munro v. Lucy Activewear, Inc.*, 899 F.3d 585, 589 (8th Cir. 2018) ("However, futility is a valid basis for denying leave to amend." (quotation omitted)). "An

---

[2] *See infra* n.3.

7

amendment is futile if the amended claim could not withstand a motion to dismiss under Rule 12(b)(6)." *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (quotation omitted); *accord Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) ("Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." (quotation omitted)).

"To withstand a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to 'state a claim to relief that is plausible on its face.'" *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[3] In support of its motion to amend, Savanna Grove filed numerous exhibits purportedly evidencing Auto-Owners' bad faith. (*See* ECF Nos. 30 through 30-2.) Auto-Owners requests that these materials be "stricken and not considered as part of Savanna [Grove]'s [m]otion pursuant to [*Sela*] . . . ." (Def.'s Opp'n at 1-2.) Auto-Owners proclaims that, "[d]espite repeatedly citing to *Sela*, one wonders whether Savanna [Grove] in fact read the case. Presuming it did in fact read *Sela*, Savanna [Grove] should have noticed that the Court specifically stated that evidence in the form of affidavits by either party are irrelevant to a Rule 15 motion." (Def.'s Opp'n at 3.)

    Section 604.18 contains certain procedural steps for bringing a bad-faith claim, including the submission of "one or more affidavits showing the factual basis." *See* Minn. Stat. § 604.18, subd. 4(a); *see also Sela*, 353 F. Supp. 3d at 856 ("Subdivision 4(a) of § 604.18 sets forth the procedural steps that an insured must follow . . . ."). *Sela* held that because these procedural steps "conflict[ed] with Rules 8 and 15 of the Federal Rules of Civil Procedure" and the application of Rules 8 and 15 to a motion for leave to amend to include a bad-faith claim under § 604.18 "d[id] not violate the Rules Enabling Act," a motion for leave to amend to include a § 604.18 claim in a diversity case is "governed by Rules 8 and 15, and not by [the procedures of] § 604.18." 353 F. Supp. 3d at 863.

    While *Sela* may stand for the proposition that the plausibility of a proposed § 604.18 claim in a diversity case such as this is evaluated on the basis of the proposed pleading and not through affidavits evidencing the factual basis for the claim, *Sela* does not authorize the *striking* of such materials. *See* 353 F. Supp. 3d at 866. Auto-Owners provides no authority for its request to strike these materials other than *Sela*. *Cf. Carlson Mktg. Grp., Inc. v. Royal Indem. Co.*, No. 04-cv-3368 (PJS/JJG), 2006 WL 2917173, at *2 (D. Minn. Oct. 11, 2006) ("[T]here is no such thing as a 'motion to strike'—at least when the paper being targeted is a memorandum or affidavit submitted in connection with a motion for summary judgment. No such motion is authorized by the Federal Rules of Civil Procedure, and no such motion is authorized by the local rules of this District. Civil Rule 12(f) comes closest, authorizing parties to move a court to strike certain material from a pleading. But neither a memorandum nor an affidavit is a 'pleading.' *See* Fed. R. Civ. P. 8. This point has been made repeatedly, both by judges of this District and judges of other districts." (citations omitted)). Auto-Owners' request to have these materials stricken is denied. Consistent with *Sela*, however, the Court has not considered them here.

8

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "[A]lthough a complaint need not contain 'detailed factual allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'" *U.S. ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *Raynor*, 690 F.3d at 955.

### 1. Section 604.18

"Section 604.18 provides a remedy for an insured when an insurer denies a first-party claim without a reasonable basis." *Wilbur v. State Farm Mut. Auto. Ins. Co.*, 892 N.W.2d 521, 524 (Minn. 2017) (footnote omitted); *accord Sela*, 353 F. Supp. 3d at 865. It provides that

> [t]he court may award as taxable costs to an insured against an insurer amounts as provided in subdivision 3 if the insured can show:
>
> (1) the absence of a reasonable basis for denying the benefits of the insurance policy; and
>
> (2) that the insurer knew of the lack of a reasonable basis for denying the benefits of the insurance policy or acted in reckless disregard of the lack of a reasonable basis for denying the benefits of the insurance policy.

9

Minn. Stat. § 604.18, subd. 2(a).

"This first prong is an objective standard that asks whether a reasonable insurer would have denied or delayed payment of the claim under the facts and circumstances." *Friedberg v. Chubb & Son, Inc.*, 800 F. Supp. 2d 1020, 1025 (D. Minn. 2011); *accord Sela*, 353 F. Supp. 3d at 864. "This prong requires courts to 'consider whether the claim was properly investigated and whether the results of the investigation were subjected to reasonable evaluation and review.'" *Sela*, 353 F. Supp. 3d at 864 (quoting *Friedberg*, 800 F. Supp. 2d at 1025). "Whether an insurer has acted reasonably in good or bad faith is measured against what another reasonable insurer would have done in a similar situation." *Friedberg*, 800 F. Supp. 2d at 1025.

"The second prong is subjective and turns on what the insurer knew and when." *Id.*; *accord Sela*, 353 F. Supp. 3d at 864. "Knowledge of the lack of a reasonable basis may be inferred and imputed to an insurer where there is reckless indifference to facts or proofs submitted by the insured." *Friedberg*, 800 F. Supp. 2d at 1025; *accord Sela*, 353 F. Supp. 3d at 864. "If coverage of the claim is 'fairly debatable,' though, 'the insurer is entitled to debate it, whether debate concerns a matter of fact or law.'" *Sela*, 353 F. Supp. 3d at 864 (quoting *Freidberg*, 800 F. Supp. 2d at 1025).

### 2. Proposed Amended Complaint

Based on its proposed amended pleading, Savanna Grove takes issue with nearly all aspects of Auto-Owners' investigation (or lack thereof) and handling of its claim. (*See, e.g.*, Proposed Am. Compl. ¶¶ 23-50, 78.b-l, ECF No. 27-2; *see also* Proposed Am. Compl.

¶ 99.) Savanna Grove's laundry list of criticisms—whether valid or not—make it difficult for the Court to discern what facts form the basis of its § 604.18 claim. In any event, "[§] 604.18 does not provide a cause of action against any insurer who acts unreasonably in any way. Rather, § 604.18 creates a cause of action against an insurer who acts unreasonably in *denying a claim*—or, as the statute puts it, in 'denying the benefits of the insurance policy.'" *Sela*, 353 F. Supp. 3d at 865 (quoting Minn. Stat. § 604.18, subd. 2(a)). "Courts thus must determine whether the 'denial of the claim' was unreasonable when determining whether an insured can recover under § 604.18." *Id.*

Fundamentally, Auto-Owners has not denied that Savanna Grove experienced a covered loss under the policy. Nor does Savanna Grove suggest otherwise. The parties' dispute was over the amount of the loss, specifically, certain components of the loss: applicable market pricing; additional damages and costs not reflected in Auto-Owners' estimate; allowances for profit and overhead; and project management. (Proposed Am. Compl. ¶¶ 25, 28, 30-32, 34.) This dispute led to the appraisal process and ultimately the appraisal panel's determination of the amount of the loss, namely, the *value* of the replacement cost. (Proposed Am. Compl. ¶¶ 51-59.)

Savanna Grove alleges that, under the policy, Auto-Owners was obligated "to pay a loss within five business days of an appraisal award." (Proposed Am. Compl. ¶ 15; *see* Proposed Am. Compl. ¶ 62; Minnesota Changes ¶ D, Ex. A to Compl., ECF No. 1-2 at 21.[4]) Savanna Grove alleges that while Auto-Owners made some additional payments

---

[4] The policy documents were attached to the Complaint. *See, e.g.*, *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) ("In addressing a motion to dismiss, the court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." (quotation omitted)).

following the appraisal award, (Proposed Am. Compl. ¶¶ 63, 70), Auto-Owners has not paid the balance of the appraisal award, (Proposed Am. Compl. ¶¶ 72, 99; *see* Proposed Am. Compl. ¶ 68). Savanna Grove alleges that it provided Auto-Owners with final invoices from both its general contractor and another contractor it used for deck-staining. (Proposed Am. Compl. ¶¶ 65-66, 70.) Savanna Grove alleges that "[d]espite . . . represent[ing] that a final invoice showing the amounts incurred would suffice" and paying for the deck-staining based on that contractor's final invoice, Auto-Owners refused to pay the balance of the appraisal award based on the general contractor's invoice, "claiming that [Savanna Grove] had not provided 'documentation showing what [it] actually spent to repair or replace the property." (Proposed Am. Compl. ¶¶ 68, 40.) Savanna Grove alleges that Auto-Owners then conditioned further payment on the production of more documentation from its general contractor. (Proposed Am. Compl. ¶¶ 68, 99; *see* Proposed Am. Compl. ¶ 79.) Savanna Grove alleges that this documentation was unnecessary and not required under the policy. (Proposed Am. Compl. ¶¶ 71, 99.)

As best as this Court is able to tell, the crux of Savanna Grove's proposed § 604.18 claim is that Auto-Owners' failure to pay the full amount of the appraisal award within five business days and demand for documentation beyond the final invoices before making further payment constitutes a "de facto" denial of benefits for purposes of § 604.18. Savanna Grove also relies on the opinions of an expert regarding the purported unreasonableness and unlawfulness of Auto-Owners' actions, which are summarized in the Proposed Amended Complaint. (Proposed Am. Compl. ¶¶ 78, 103.)

### 3. Analysis

Savanna Grove must plead facts from which it can plausibly be inferred that Auto-Owners denied Savanna Grove the benefits of the policy in order to state a claim under § 604.18. In relevant part, the policy required Auto-Owners to pay for a covered loss within five business days after it received proof of loss and "an appraisal award ha[d] been made." (Minnesota Changes ¶ D.) Savanna Grove has alleged sufficient facts that it fulfilled the conditions of the policy, yet Auto-Owners refused to pay the remainder of the appraisal award while continuing to demand more documentation, and that together this refusal and continued demand effectively denied Savanna Grove the benefits of the policy.

"Minnesota courts have recognized that an insurer can constructively deny a claim through its conduct." *Weber v. Travelers Home & Marine Ins. Co.*, 801 F. Supp. 2d 819, 832 (D. Minn. 2011) (citing cases); *see, e.g.*, *Hansen v. Markel Am. Ins. Co.*, No. 15-cv-2833 (RHK/JSM), 2016 WL 2901738, at *2 (D. Minn. May 18, 2016) (claim for damage to grounded yacht was "effectively denied" as to the requested engine repairs where appraiser concluded engine repairs were not due to grounding and did not include them in damage appraisal, and insurer paid only appraised amount on claim); *Weber*, 801 F. Supp. 2d at 832 (insurer's rejection of insured's "Sworn Statement in Proof of Loss" was "the functional equivalent of a denial"); *Perry v. State Farm. Mut. Auto. Ins. Co.*, 506 F. Supp. 130, 133-34 (D. Minn. 1980) (one of two grounds provided for denial of coverage under one aspect of policy "could reasonably be interpreted as a denial . . . of benefits" under another).

Auto-Owners argues that any § 604.18 claim is futile because there has been no denial. According to Auto-Owners, Savanna Grove has not plausibly alleged that it was denied the benefits of the policy because the Proposed Amended Complaint acknowledges that Auto-Owners made additional payments after the appraisal award and "notified [Savanna Grove] that it needed additional documentation before it could make payments on certain things." (Def.'s Mem. in Opp'n at 8.) But, an insurer can constructively deny a claim when the "insurer possesses the information necessary to decide an insured's claim but fails to act on that information." *Weber*, 801 F. Supp. 2d at 832. Savanna Grove has plausibly alleged that Auto-Owners' continued non-payment of the balance of the appraisal award and demand for more documentation after it received the final invoices effectively denied Savanna Grove the benefits of the policy because a reasonable insurer would have accepted the invoices as proof of the amount Savanna Grove actually and necessarily spent; the amount actually and necessarily spent exceeded the replacement-cost value of the appraisal award; and therefore, Savanna Grove was entitled to the remainder of the appraisal award—the lesser amount—under the policy.

Auto-Owners' remaining arguments are similarly unavailing for purposes of determining whether Savanna Grove has stated a claim under § 604.18. That Auto-Owners' request for more documentation may have been otherwise permitted under the policy or that the policy still permitted Auto-Owners to deny the claim following the appraisal award are all defenses that go to the reasonableness of Auto-Owners' actions. (*See* Def's. Opp'n at 5-7.) Notably, bad faith does not "arise simply because the insurer's construction of the policy was subsequently found to be legally incorrect." *Friedberg*, 800

F. Supp. 2d at 1027. Likewise, it may be that Auto-Owners was acting as a reasonable insurer would in waiting to make payments until certain information was provided, and thus any resultant delays were likewise reasonable. (*See* Def.'s Mem. in Opp'n at 8.) These arguments, however, all go to the merits of a § 604.18 claim.

Lastly, to be clear, the Court is not taking the position that the appraisal award itself was somehow "sacrosanct," (Def.'s Mem. in Opp'n at 6), or that the issuance of the appraisal award determined Auto-Owners' liability under the policy.

> Appraisal is a means for resolving factual disputes over the *amount* of a loss. Appraisal is not a means for resolving legal disputes over whether an insurer must *cover* a loss. An appraiser can determine the amount of any check that the insurer must cut, but an appraiser cannot determine whether an insurer must cut a check in the first place.

*Sela*, 353 F. Supp. 3d at 864; *accord Savanna Grove Op.*, 2020 WL 468905, at *4. In concluding that Savanna Grove has stated a claim under § 604.18, the Court is not saying that the amount of the loss determined by the appraisal award somehow dictated Auto-Owners' liability, if any, under the policy. The appraisal award is just part of the factual basis comprising Savanna Grove's allegations that the conditions of the policy had been met and Auto-Owners had before it the information needed to evaluate and review Savanna Grove's claim.

## V. ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Savanna Grove's Motions for Protective Order, to Quash Subpoena, and Sanctions (ECF No. 33) are **DENIED AS MOOT**.

2. Savanna Grove's Motion for Leave to Amend the Complaint (ECF No. 27) is **GRANTED**.

3. Savanna Grove shall file its Amended Complaint in substantially the same form as ECF No. 27-2 **within 7 days from the date of this Order**.

4. **Within 14 days from the date of this Order**, the parties shall meet and confer as to what effect, if any, the Court's ruling has on the existing Amended Pretrial Scheduling Order (ECF No. 63). **Within 7 days from the parties' meet and confer**, the parties shall:

    a. File a joint letter indicating that no changes are necessary;

    b. File a joint stipulation containing agreed-upon modifications to the Amended Pretrial Scheduling Order; or

    c. In the event the parties are unable to agree, file their respective proposals with a *brief* explanation in support of the party's position.

5. All prior consistent orders remain in full force and effect.

6. Failure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Dated: February  24 , 2020         *s/ Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Savanna Grove Coach Homeowners' Association v. Auto-Owners Insurance Co.*
Case No. 19-cv-1513 (ECT/TNL)